UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Ft. Lauderdale Division)

CASE NO. 12-cv-61948-DIMITROULEAS/Snow

LORILLARD TOBACCO COMPANY,
    a Delaware corporation,

                    Plaintiff,

v.

AUPAL, INC. d/b/a STOP & SHOP,
    a Florida corporation,

                    Defendant.
_____/

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO ACCELERATE DISCOVERY AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff Lorillard Tobacco Company ("Lorillard") moves this Court for entry of a Preliminary Injunction and Order to Accelerate Discovery. In support of this Motion, Lorillard states as follows:

1.  Lorillard is one of the leading cigarette manufacturers in the United States, and has registered its trademarks with the United States Patent and Trademark Office, including, among others:

NEWPORT® (stylized) (Reg. No. 2,600,870):

**Newport**

Spinnaker Design® (Reg. No. 1,178,413):



**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

Design Only® (Reg. No. 3,618,542):



LORILLARD® (Reg. No. 1,920,066):

LORILLARD

Lorillard® (stylized) (Reg. No. 0,707,998):



Newport Box with Striations® (Reg. No. 3,759,763):



and NEWPORT® (Reg. No. 1,108,876) (the "Lorillard Marks").

2. Lorillard has the exclusive right to manufacture, distribute, advertise and sell NEWPORT® cigarettes in the United States.

3. Defendant Aupal Inc., d/b/a Stop & Shop ("Aupal" or "Defendant") is a Florida corporation that conducts business at 4701 Northwest 14th Street, Lauderhill, Broward County, Florida.

4. Defendant Aupal sold and/or offered for sale, within this District, counterfeit cigarettes that infringe on Lorillard's registered trademarks.

5. Lorillard has filed a Complaint in this matter alleging claims of trademark counterfeiting and infringement under 15 U.S.C. § 1114; federal unfair competition and false designations of origin and false and misleading representations under 15 U.S.C. § 1125(a); federal trademark dilution under 15 U.S.C. § 1125(c); unfair competition and trademark infringement under common law; and violation of Florida's anti-dilution statute, Fla. Stat. § 495.151.

6. Injunctive relief in the form of a preliminary injunction pursuant to Fed. R. Civ. Pro. 65 is necessary in this matter to cease Defendant's current and ongoing infringement of Lorillard's registered trademarks.

7. An order for expedited discovery is necessary in this matter to clearly determine the source of the counterfeit products.

8. In further support of this Motion, Lorillard relies upon the facts, law and argument set forth below, along with the Declarations of John Merkel, Victor Lindsley, Lawrence Greenfield, and Marla Stromberg, attached thereto as Exhibits 1, 2, 3, and 4, respectively.

3

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL 33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

## I.   INTRODUCTION

Defendant, Aupal is selling unauthorized and illicit cigarettes that bear counterfeit imitations of the trademarks and trade dress of authentic NEWPORT® cigarettes, the Lorillard Marks. The counterfeit cigarettes are being passed off as genuine NEWPORT® cigarettes, although these illicit products have not been manufactured, sold, or otherwise approved by Lorillard.

Lorillard is one of the leading cigarette manufacturers in the United States. Lorillard's bestselling brand, NEWPORT®, is also the best selling menthol cigarette in the United States. Lorillard has registered its trademark NEWPORT® with the United States Patent and Trademark Office, giving Lorillard the exclusive right to manufacture, distribute, advertise and sell NEWPORT® cigarettes in the United States.

As provided by the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1116, Fed. R. Civ. Pro. 65, and consistent with the relief ordered by many courts in similar cases in this District, Lorillard now applies to this Court for: (1) a preliminary injunction ordering Defendant to immediately cease and desist from selling the counterfeit cigarettes and other unlawful activities under federal and Florida law; and (2) an order to accelerate discovery in this matter.

## II.   FACTUAL BACKGROUND

A.   **The Parties and the Need for Immediate Relief**

1.   **Lorillard & the Counterfeit Problem**

Lorillard is one of the top sellers of premium cigarettes in the United States. Lorillard's leading brand is NEWPORT®, which has become the number one menthol brand in the United States and the second most popular cigarette brand overall. Lorillard's cigarettes are

3

manufactured in North Carolina in accordance with strict quality control standards. The cigarettes are then distributed throughout the country by a network of wholesalers and retailers, in compliance with a wide range of federal and state regulations.

In the past several years, the federal government and many states, including Florida, have substantially increased taxes on cigarettes and other tobacco products. The revenue from these taxes has been directed to various smoking cessation programs, children's health initiatives, and other such purposes. The high level of taxation, however, has made it extremely profitable for bootleggers to import and sell cigarettes in a manner designed to evade paying the taxes that apply to legitimate producers. Lorillard has discovered twenty-five loose packs and ten cartons of suspected counterfeit cigarettes at Defendant's retail location, and was able to obtain one of the cartons of the suspected counterfeits. See Exhibit 3, Declaration of Lawrence Greenfield, ¶ 4. Lorillard confirmed that the carton it obtained from Defendant contained counterfeit NEWPORT® brand cigarette packs. It was in Defendant's possession and offered for sale, and was neither manufactured nor packaged by Lorillard. See Exhibit 1, Declaration of John T. Merkel, ¶¶ 3-9.

      2.      **Defendant Aupal Inc., d/b/a Stop & Shop & Its Use of Counterfeit Product**

Defendant is a Florida corporation that conducts business at 4701 Northwest 14th Street, Lauderhill, Broward County, Florida. Aupal has sold and/or offered for sale from its store location counterfeit cigarettes that infringe the Lorillard Marks.

On September 14, 2012, Lawrence Greenfield, a Lorillard Sales Representative, went to Aupal's Stop & Shop, located at 4701 Northwest 14th Street, Lauderhill, Broward County, Florida. See Declaration of Lawrence Greenfield, Exhibit 3, ¶ 4. While at the Aupal location, Mr. Greenfield inspected the inventory of NEWPORT® cigarettes for freshness. Id. Mr.

4

Greenfield noticed twenty-five (25) packs of "Newport Box 80" cigarettes in the overhead sales rack and nine (9) cartons of "Newport Box 80" cigarettes under the selling counter with old date codes. *Id.* Since old date codes are an indicator that cigarette packs may be counterfeit, Mr. Greenfield suspected the "Newport Box 80" cigarettes in the overhead and under the selling counter were counterfeit. *Id.* Mr. Greenfield swapped one carton containing ten (10) packs of the suspected counterfeits with genuine NEWPORT® cigarettes. *Id.*

Mr. Greenfield took the carton of suspected counterfeit cigarettes and showed them to Marla Stromberg, Division Manager for Lorillard. *Id.* at ¶ 5; *see also* Declaration of Marla Stromberg, Exhibit 4, ¶ 5. Ms. Stromberg observed the carton containing ten (10) packs of cigarettes and agreed that they appeared to be counterfeit.[1] *Id.* Ms. Stromberg and Mr. Greenfield placed the carton of cigarette packs obtained from Aupal in a Federal Express package addressed to John Merkel, Manager Sales Planning at Lorillard Tobacco Company. *Id.* at ¶ 6.

Upon receipt, Mr. Merkel inspected the carton containing ten (10) packs of "Newport Box 80" cigarettes bearing the "Newport" brand name sent to him by Ms. Stromberg and Mr. Greenfield. *See* Exhibit 1, ¶3. Through his investigation and analysis, Mr. Merkel was able to determine that for specific reasons visible to even the untrained eye, the carton of cigarettes obtained from Defendant Aupal's retail store was counterfeit. *Id.* at ¶¶ 3-10. Specifically, Mr. Merkel cited to the differences in the package printing between authentic NEWPORT® cigarettes and those packages of cigarettes sold by Defendant Aupal. *Id.* at ¶¶ 5-6. The clarity of

---

[1] Representatives of Lorillard also contacted the Florida Division of Alcoholic Beverages & Tobacco after discovery of the counterfeit product. Upon information and belief, the Florida authorities seized other counterfeit product bearing Lorillard's Marks from Defendant's retail location.

5

the printing on genuine packages of cigarettes is not as sharp as that found on the counterfeit packs of cigarettes obtained from Aupal.  *Id.*  In addition, the carton of cigarettes retrieved from the Aupal retail store also included out of date product codes.  *Id.* at ¶ 8.  Specifically, the product code appearing on the carton flap was OK12D510 8:48.  *Id.*  This is a known counterfeit product code.  *Id.*  The counterfeit code on the cigarette packages in the carton was "1B19104" and the time stamp was "9:55".  *Id.*  This code is out of date with regard to genuine NEWPORT® product, and is indicative of a counterfeit.  *Id.*

A third indicator of counterfeit product is the elasticity of the tear tape of the cellophane wrapping of cigarette packs.  *Id.* at ¶ 9.  Lorillard's tear tape has no elasticity, but Mr. Merkel found that the cigarette packages in the carton obtained from Aupal Inc., d/b/a Stop & Shop had tear tapes that will stretch to nearly twice their original length.  *Id.*  Ultimately, Mr. Merkel concluded that he is certain that the carton containing ten packs of cigarettes obtained from the Aupal retail store is counterfeit product.  *Id.*

   **3.**  **Urgency**

Time is of the essence in this matter because of actual ongoing and threatened trademark infringement as a result of Defendant offering counterfeit cigarettes for sale.  Because the product in question is sold to the public, if further sales occur during the course of this litigation, the evidence of infringement and the extent of that infringement will be destroyed.  Without a preliminary injunction, Defendant would be permitted to continue infringing on Lorillard's intellectual property rights, misleading consumers as to the source and sponsorship of Defendant's product, and diluting Lorillard's hard-earned consumer recognition and goodwill.

6

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

B.     **Lorillard's Registered Trademarks**

Lorillard and its predecessor entities have used the NEWPORT® trademark continuously since at least 1956. Lorillard incorporates the Lorillard Marks into its cigarette packaging to identify the source of the products. Among other marks, Lorillard and its affiliated entities hold federal registrations for the marks: NEWPORT® (stylized) (Reg. No. 2,600,870), Spinnaker Design® (Reg. No. 1,178,413), Design Only® (Reg. No. 3,618,542), LORILLARD® (Reg. No. 1,920,066), Lorillard® (stylized) (Reg. No. 0,707,998), Newport Box with Striations® (Reg. No. 3,759,763), and NEWPORT® (Reg. No. 1,108,876). (*See* Exhibit 2, Declaration of Victor Lindsley at ¶ 4 and its attachments A-G, which are the Certificates of Registration).

III.    **INJUNCTIVE RELIEF IS NECESSARY TO STOP DEFENDANT'S ONGOING INFRINGEMENT**

Lorillard seeks a preliminary injunction prohibiting Defendant from further infringing upon Lorillard's protected trademarks. Injunctions are specifically authorized in trademark cases. 15 U.S.C. § 1116(a). In fact, "trademark actions are common venues for the issuance of preliminary injunctions." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (citations omitted). Indeed, the only way to protect Lorillard's interest in this matter is to enter an order prohibiting Defendant from engaging in similar activity during the duration of this litigation.

A.     **The Court Should Issue a Preliminary Injunction**

To issue a preliminary injunction, "a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor. Instead, it must determine whether the evidence establishes: '(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the

7

injunction would not disserve the public interest.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (upholding motion for preliminary injunction in a trademark case) (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)).

As set forth in greater detail below, Lorillard can satisfy each of these factors. Further, in a factually similar case to the one at hand, the Sixth Circuit found that Lorillard sufficiently demonstrated each of the factors necessary for a preliminary injunction to issue, demonstrating that a preliminary injunction should similarly issue here. *Lorillard Tobacco Company v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006) ("Lorillard has unquestionably satisfied each of the requisite criteria [for a preliminary injunction to issue]").

### B. Lorillard is Likely to Prevail on its Trademark Claims

In order to prove a violation under the Lanham Act, Lorillard has to prove (1) that its mark is valid, and (2) that defendant's use of the contested mark is likely to cause confusion. *Dieter v. B & H Industries*, 880 F.2d 322, 326 (11th Cir. 1989); *see also Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Lorillard can satisfy both of these elements, and is therefore likely to prevail on its trademark infringement claim. Thus, a preliminary injunction is proper under these circumstances.

#### 1. Lorillard is the Owner of Valid and Protectable Trademarks

Actual use of a trademark, without more, establishes protectable trademark rights under the common law. *See* 1 J. McCarthy, Trademarks and Unfair Competition, § 16:5, at 733 (2d ed. 1984). In addition, many of Lorillard's trademarks have been registered with the United States Patent and Trademark Office. *See* Exhibit 2, Dec. of V. Lindsley at ¶ 4 and its attachments A-G. Lorillard and its predecessors have used these trademarks since at least 1956. Exhibit 2 at ¶ 3.

8

### 2. Defendant's Use of Lorillard's Trademarks is Likely to Cause Confusion Concerning the Origin of the Goods

The most significant factor in determining whether a plaintiff will prevail on claims of trademark infringement is whether a defendant's use of a trademark is likely to cause confusion concerning the origin of the goods. The Eleventh Circuit has set forth seven factors a court should use to determine the likelihood of consumer confusion for trademark infringement:

(1) the type of mark;
(2) the similarity of the marks;
(3) the similarity of the products the marks represent;
(4) the similarity of the parties' retail outlets (trade channels) and customers;
(5) the similarity of advertising media;
(6) the defendant's intent; and
(7) actual confusion.

*Frehling Enterprises, Inc.*, 192 F.3d at 1335. These factors must be considered together, and analysis is not mathematical. Rather, "when looking at the evidence the reviewing court must take into consideration the circumstances surrounding each particular case." *Dieter*, 880 F.2d at 326 n.3. However, "the type of mark and the evidence of actual confusion are the most important." *Frehling Enterprises, Inc.*, 192 F.3d at 1335. Analysis of each of these factors indicates that Lorillard is likely to succeed on its claim of trademark infringement. *See Amouri's Grand Foods*, 453 F.3d at 381 ("Lorillard's cogent analysis of th[e]se factors demonstrates persuasively (and as might be expected in any counterfeiting case--especially where the counterfeiting is skillful), here there is a certainty of 'confusion among consumers regarding the origin' of the cigarette packages offered for sale by Grand Foods").

#### a) Lorillard's Trademarks are Strong

"Classifying the type of mark Plaintiff has determines whether it is strong or weak." *Frehling Enterprises, Inc.*, 192 F.3d at 1335. A mark can be (1) generic, (2) descriptive, (3) suggestive or (4) arbitrary. *Id.* An arbitrary mark is "a word or phrase that bears no relationship

9

to the product (e.g., 'Sun Bank' is arbitrary when applied to banking services.)." *Id.* Additionally, the distinctiveness of a mark further strengthens it. See *id.*; see *also John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983). And, registration of a mark establishes a rebuttable presumption that the mark is inherently distinctive. *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007).

Lorillard's trademarks are "arbitrary" – the word "Newport" bears no inherent relationship to cigarettes. Additionally, Lorillard's trademarks are extremely strong and distinctive. NEWPORT® is a well known mark used continuously since the 1950s and has been developed into the most popular brand of menthol cigarettes in the United States. Exhibit 2 at ¶ 3. Lorillard has deliberately strengthened its trademarks by advertising and marketing. Lorillard has committed substantial time, money, and creativity to develop the consumer awareness and goodwill associated with its trademarks. For example, Lorillard spends millions of dollars per year in marketing and promotional activities for the NEWPORT® brand. *Id*. at ¶ 5. Lorillard's marketing and advertising activities have included magazines and other print media, point of sale advertising, point of sale displays and direct mail to consumers. *Id.* In sum, Lorillard has gone to great lengths to strengthen its trademark ensure that its product is recognized by consumers in the marketplace.

### b) Similarity of Marks

When evaluating the similarity of the marks, "the court compares the marks and considers the overall impression the mark creates, including the . . . appearance, and manner in which they are used." *Frehling Enterprises, Inc*., 192 F.3d at 1337. The similarity of marks "is even more striking [when] both sides claim usage of the same word thus the likelihood of confusion is more apparent." *Mystique, Inc. v. 138 Int'l, Inc.*, 601 F. Supp. 2d 1320, 1325 (S.D.

10

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

Fla. 2009). In this case, it appears that Defendant is using marks **identical** to the registered marks owned by Lorillard. There can be no question but that the counterfeit marks are similar in appearance, and would be confusing to the public when singly presented.

### c) Similarity of the Products

In evaluating the similarity of the products, the court must determine whether "the products are the kind that the public attributes to a single source." *Frehling Enterprises, Inc*., 192 F.3d at 1338. This factor clearly weighs in Lorillard's favor as the types of goods in question in this matter are not only related, but identical. Both Lorillard and Defendant used the marks on cigarettes: Lorillard on legitimate and authentic products, and Defendant on illegitimate and illegal products. Thus, consumers are highly likely to be confused about the origin of these goods.

### d) Trade Channels and Customers are Similar

The similarity of the parties' retail outlets and customers "takes into consideration where, how, and to whom the parties' products are sold." *Frehling Enterprises, Inc*., 192 F.3d at 1339. Both Lorillard and Defendant ultimately sell their cigarettes to consumers in the United States. Indeed, Defendant apparently sells legitimate cigarettes along with the counterfeit cigarettes at issue. Thus, the trade channels and customers in this situation are identical.

### e) Similarity of Advertising

Similarity of advertising is "a relatively minor factor compared to the other components analyzed to determine the likelihood of confusion." *Tancogne v. Tomjai Enterprises Corp*., 408 F. Supp. 2d 1237, 1249 (S.D. Fla. 2005). Lorillard spends millions of dollars every year in marketing and promotional activities for the NEWPORT® brand. *See* Exhibit 2 at ¶ 5.

11

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL 33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

Defendant also likely advertises the NEWPORT® brand for sale within its retail location with signs and displays.

### f)    Defendant's Intent

If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an interference of confusing similarity. *Frehling Enterprises, Inc*., 192 F.3d at 1340*; See also Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 466 (4th Cir. 1996), *cert. denied*, 519 U.S. 976 (1996) ("We presume that the person who sets out to infringe on another's trademarks has more brains than scruples, and will likely succeed").

There are innumerable designs and trademarks which could be used on cigarettes to identify their source or to create a brand identify.  There is no need for Defendant to counterfeit Lorillard's trademarks other than to exploit those marks and suggest an association or affiliation between Lorillard and the counterfeit products, which supports a finding of likelihood of confusion.

### g)    Actual Confusion

Although convincing evidence of significant actual confusion occurring under actual marketplace conditions would be the best evidence of a likelihood of confusion, the absence of such evidence is not dispositive. *See Frehling Enterprises, Inc*., 192 F.3d at 1340.   A successful Lanham Act plaintiff need only show a sufficient potential of confusion, not actual confusion. *See Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1264 (M.D. Fla. 2009).  Nevertheless, confusion is most likely where, as here, the defendant uses a counterfeit mark. *See Microsoft Corp. v. CMOS Tech.*, 872 F. Supp. 1329, 1335 (D. N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct competition with the plaintiff, sold counterfeit products on

12

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

which plaintiff's registered marks appear in their entirety. Under these circumstances, the likelihood of consumer confusion, mistake or deception is clear"). Thus, the likelihood of consumer confusion is high, another indication that Lorillard will be successful in its trademark infringement claim.

### C. Lorillard Will Be Irreparably Harmed Absent the Issuance of Injunctive Relief

For purposes of all the claims set forth in the complaint, the conduct of Defendant is causing irreparable injury to Plaintiff and to its goodwill and reputation, and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) ("[Plaintiff] faces damage to its own reputation and loss of customers caused by [defendant's] distribution of an allegedly inferior (and possibly dangerous) product held out to be [Plaintiff's].") (affirming preliminary injunction); *see also Nat'l Car Rental Sys. Inc. v. Nat'l Car Sales Inc.*, 17 U.S.P.Q.2d 1959, 1962 (M.D. Fla. 1990) ("The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the Defendant's goods."). Plaintiffs have no adequate remedy at law.

Lorillard has clearly shown that it would be irreparably harmed if Defendant was permitted to continue selling counterfeit cigarettes bearing Lorillard's protected trademarks throughout the course of this matter. Thus, entry of a preliminary injunction is proper in this case.

### D. The Issuance of Injunctive Relief Would Not Harm Others

Any potential harm to the Defendant from ceasing the sale or distribution of products with counterfeit and infringing trademarks and logos is minimal compared to the dilution of the substantial value and goodwill inherent in Lorillard's trademarks. Lorillard's request for a

13

preliminary injunction does nothing to preclude Defendant from selling cigarettes that do not infringe on Lorillard's rights. Defendant is free to continue its lawful business in the sale of cigarettes that do not infringe the Lorillard Marks. Preventing Defendant from continuing to sell counterfeit products, however, cannot be a compelling hardship. Thus, the balance of hardships weighs sharply in Lorillard's favor.

### E. Granting This Injunctive Relief is in the Public Interest

The public interest is served by protecting a trademark holder's interest in its mark and by preventing consumer confusion. *See Gaffigan v. Doe,* 689 F. Supp. 2d 1332, 1341 (S.D. Fla. 2009). Moreover, Defendant is currently deceiving the public by selling counterfeit cigarettes, which it holds out as being authentic Lorillard products. Ending this behavior through injunctive relief not only protects Lorillard's interest in its protected trademarks, but also protects the public from Defendant's continuing deception. For these reasons, this Court should issue a preliminary injunction prohibiting Defendant from advertising, offering, marketing, or selling any product which infringes upon the Lorillard Marks.

### IV. THE COURT SHOULD PERMIT PLAINTIFF TO CONDUCT EXPEDITED DISCOVERY TO PREVENT DEFENDANT'S SPOLIATION OF HIGHLY PROBATIVE EVIDENCE AND ORDER DEFENDANT TO PRESERVE POTENTIALLY RELEVANT EVIDENCE

Under Fed. R. Civ. P. Rule 26(d), the Court has discretion to authorize expedited discovery when prejudice would otherwise result. *See Fimab-Finanziaria Maglifico Biellese Fratelli Fila S.p.A. v. Helio Import/Export*, 601 F. Supp. 1, 3 (S.D. Fla. 1983) ("Expedited discovery should be granted when unusual circumstances or conditions exist such that a party would be prejudiced if it were required to wait the normal time. Such relief may be granted *ex parte*.") (citations omitted). Expedited discovery is especially appropriate where, as here, there is a strong likelihood that the defendant will destroy or conceal evidence. *See*, *e.g.*, *Ayyash v.*

14

*Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (plaintiffs established good cause for seeking expedited discovery on an *ex parte* basis where defendants "have both incentive and capacity to hide their assets" and "there is considerable urgency to plaintiff's need to seek information"); *see also F.T.C. v. Vocational Guides, Inc.*, 2008 WL 4908769, at *6 (M.D. Tenn. Nov. 12, 2008) (expedited discovery granted due to defendant's "past history of fraud . . . [and] concealment of assets [and the] good cause to believe that he will dissipate assets and destroy property or evidence"); *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008) (expedited discovery granted where "the likelihood of discovering evidence relevant to [plaintiff's] claims will decrease, due to intentional destruction or transfer of evidence by the defendant," and "plaintiffs have shown the potential for spoliation of evidence and resulting prejudice to plaintiffs and the connection between that prejudice and the discovery sought").

Defendant, by distributing counterfeit products to its customers, commits trademark infringement and counterfeiting. There is ample reason to conclude that probative evidence will be lost if the Court declines to grant expedited discovery here.

Plaintiff's investigation has produced substantial evidence that Defendant is systematically distributing counterfeit cigarettes in violation of Plaintiff's trademark rights. Aupal is not a reputable company that can be expected to abide by the rules. Given the criminal nature of Defendant's unlawful activities and the strong likelihood that Defendants will destroy, secrete, or discard probative and inculpatory evidence in advance of production, expedited discovery is necessary to avoid prejudice to Plaintiffs.

The Federal Rules of Civil Procedure provide for accelerated discovery upon motion. *See* Fed. R. Civ. P. 26, 30, and 34. Specifically, Fed. R. Civ. Pro. 34(b) provides that with leave of Court a document request can be served prior to the time regularly prescribed by the Federal

15

Rules.  Additionally, Fed. R. Civ. P. 30(a) provides that depositions may be taken, upon court order, prior to the Rule 26(f) conference.

Further, as a natural extension of the request for expedited discovery, Plaintiff also seeks an order to prevent Defendant's spoliation of relevant and inculpatory evidence.  Such an order places on Defendant a burden no greater than that which it would otherwise have upon receiving notice of this lawsuit.  *See, e.g., Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 126 (S.D.Fla.1987) ("[O]nce a complaint is filed, [a litigant] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request") (citation omitted); *Banco Latino, S.A.C.A. v. Gomez Lopez,* 53 F. Supp. 2d 1273, 1277 (S.D. Fla. 1999) ("A litigant is under a duty to preserve evidence which it knows, or reasonably should know, is relevant in an action."). Plaintiff simply wishes to ensure that Defendant has express notice from the Court of its duty to retain all potentially relevant documents and things in their possession, custody and control, wherever they may be located, so they cannot feign ignorance of this obligation at a later date.

Courts have held that good cause exists to grant expedited discovery in cases involving claims of unfair competition or infringement.  *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002).  Good cause may also exist for expedited discovery when plaintiff seeks a preliminary injunction. *Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) (holding good cause existed to allow expedited discovery because such discovery would expedite resolution of plaintiff's claims for injunctive relief).  Lorillard has an urgent need for discovery in this underlying case.  It is vital that Lorillard be able to trace the sources of the products bearing the counterfeit marks before the trail grows cold.  It would be

16

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL  33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191

detrimental and prejudicial to delay discovery in this matter. Therefore, Lorillard requests that the Court permit written and deposition discovery to begin immediately upon the issuance of the preliminary injunction, and requests the Court's entry of an order requiring Defendant to preserve evidence.

## IV. CONCLUSION

Based on the foregoing, Lorillard requests that this Court issue: (1) a preliminary injunction prohibiting Defendant from using the Lorillard Marks in any manner likely to cause others to believe that Defendant's products are connected with Lorillard or are genuine Lorillard products and (2) an order permitting accelerated discovery in this matter.

Date:   October 4, 2012                    Respectfully submitted,

                                           **LOTT & FISCHER, PL**

                                           s/ Leslie J. Lott
                                           Ury Fischer
                                           Florida Bar No. 048534
                                           E-mail: UFischer@lottfischer.com
                                           Leslie J. Lott
                                           Florida Bar No. 182196
                                           E-mail: LJLott@lottfischer.com
                                           Stephen D. Lott
                                           Florida Bar No. 091818
                                           E-mail: SDLott@lottfischer.com
                                           355 Alhambra Circle, Suite 1100
                                           Coral Gables, FL 33134
                                           Telephone: (305) 448-7089
                                           Facsimile: (305) 446-6191

                                           and
                                           OF COUNSEL

                                           Kathleen A. Lang
                                           E-mail: KLang@dickinsonwright.com
                                           Kelley M. Haladyna
                                           E-mail: KHaladyna@dickinsonwright.com

17

CASE NO. 12-cv-61948-DIMITROULEAS/Snow

Jeffrey E. Ammons
E-mail: JAmmons@dickinsonwright.com
**Dickinson Wright PLLC**
500 Woodward Avenue, Suite 4000
Detroit, MI 48226-3425
Telephone: (313) 223-3500
Facsimile: (313) 223-3598
*(applications for admission pro hac vice to be filed)*

*Attorneys for Plaintiff Lorillard Tobacco Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 4, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served via hand delivery along with the Issued Summons, Complaint, and Exhibits, on the following:

Aupal, Inc.
4701 N.W. 14th Street
Lauderhill, FL 33313

/s/ Stephen D. Lott
Stephen D. Lott

**LOTT & FISCHER, PL** • 355 Alhambra Circle • Suite 1100 • Coral Gables, FL 33134
Telephone: (305) 448-7089 • Facsimile: (305) 446-6191